UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

97 APR 22 PM 2:43

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

FARM PLAN CORPORATION,
a Delaware corporation,

CIVIL ACTION NO.
MAGISTRATE

Plaintiff,

v.

SAMUEL W. GROOME, a/k/a SAM W.
GROOME, WILLIAM STEVEN
BRASWELL, STEVEN BRASWELL,
JOHN DOE 1 through 10, and
CHADD DEVELOPMENT CORP.,

Defendants.

_____/

# 97-8284

## CIV-FERGUSON

MAGISTRATE JUDGE
SNOW

## **COMPLAINT**

Plaintiff brings this Complaint for damages and other relief, and shows the Court the following:

### **PLAINTIFF**

1.    FARM PLAN CORPORATION ("Farm Plan") is a Delaware corporation with its principal office and place of business in the State of Wisconsin.

### **DEFENDANTS**

2.    SAMUEL W. GROOME ("Groome"), during times pertinent to the allegations below, was a resident of Palm Beach County, Florida, and owned/owns property in Palm Beach County.  Groome continues to operate business enterprises in Palm Beach County and, on information and belief, continues to own and lease property in that county by and through corporate entities that he controls.



3.    WILLIAM STEVEN BRASWELL ("Braswell Jr.") is a resident of Palm Beach County, Florida.

4.    STEVEN BRASWELL ("Braswell Sr.") is a resident of Palm Beach County, Florida.

5.    Defendant Chadd Development corporation, a Florida corporation, was, at all times pertinent to this Complaint, owned and/or controlled by Defendant Groome and was used by this Defendant an artifice to defraud Plaintiff, as outlined more fully infra. This Defendant Corporation was also, on information and belief, used by this Defendant to conceal the fraudulent activities of Defendant Groome and this corporate Defendant.

6.    Defendants John Doe 1-10 are individuals, partnerships and corporations whose identities are not presently known or identifiable, who assisted the named defendants in the racketeering and fraudulent activities outlined infra. Some of these individuals and entities were used by the named defendants to secrete the ill-gotten gains of these defendants related to racketeering and fraudulent activities of the named defendants.

## JURISDICTION AND VENUE

7.    This is an action for damages and other appropriate relief involving federal questions arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1961 et seq. This Court has jurisdiction over the federal claims in this matter under 18 U.S.C. §1964 and 28 U.S.C. §1332. In addition, this is an action for damages and other appropriate relief involving claims arising under §§768.72 and 768.73, Fla. Stat., §§895.03 and 895.05, Fla. Stat., and Chapter 772, Fla. Stat. This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. §1367. Further, this Court has diversity jurisdiction in this matter because there is complete

2

diversity between the Plaintiff and Defendants. Diversity jurisdiction exists under 28 U.S.C. §1332 because the amount in controversy exceeds $50,000.00, exclusive of costs and interest.

8. The claims asserted in the Complaint arose in this district.

9. Venue is proper with this Court under the provisions of 18 U.S.C. §1965 and 28 U.S.C. §1391.

## INTRODUCTION AND SUMMARY OF WRONGFUL ACTS

10. Defendant Samuel W. Groome ("Groome"), formerly President of Marathon Feed & Supply Corporation, and President of Marathon Feed & Supply Corporation d/b/a Farm Depot, and personal guarantor of their indebtedness to Farm Plan, conspired and acted in concert with William Steven Braswell ("Braswell Jr."), Steven Braswell ("Braswell Sr."), Chad Development Corp., and John Does, to defraud Plaintiff.

11. Defendants conspired to defraud Farm Plan by committing numerous acts of racketeering activity through use of the enterprise, Marathon Feed & Supply Corporation, later known as Farm Depot, later known as Farm Depot, Inc., later known as Farm Depot of Wellington, Inc., for a period of time extending from at least 1993 through mid-1995. Defendants' unlawful conduct violated criminal statutes of the United States and the State of Florida, and include mail fraud and wire fraud in interstate commerce, theft by deception, and theft by conversion. As a direct result of these fraudulent activities, Plaintiff has suffered damages in an amount to be proved at trial, but which as of the date of the filing of this Complaint total at least $586,114.50.

12. Marathon Feed & Supply Corporation ("Marathon") was a Florida corporation formed in 1993 by its president, sole shareholder, and sole director, Defendant Samuel W. Groome,

3

Sr. Marathon was a retail animal feed, farm supply, hay, and farm equipment retail store located at 2773 State Road 7, West Palm Beach, Palm Beach County, Florida.

13.      The West Palm Beach area contains many farms and horse ranches, and in the winter it is a center for polo, so that many owners bring their horses into the area for the season, requiring hay, straw, feed, and other supplies during that time. Marathon was one of the retailers to this clientele.

14.      Marathon originated as Groome-owned Rangeline Supply Corporation, whose assets Groome sold to Gilman Hallenbeck ("Hallenbeck") in 1992. Hallenbeck paid Groome with cash and provided a promissory note for the balance of the purchase price. In conjunction with the sale of the assets, Hallenbeck's company was given a lien on certain tangible property used to operate the business. The business occupied premises whose building and land was owned and/or leased at all material times by Groome's Chadd Development Corp. Hallenbeck was induced to buy the store as the result of the production by Groome of tax returns showing annual profits in the hundreds of thousands of dollars for Rangeline Supply Corporation. Hallenbeck discovered after he took over the store that it was not profitable, and Hallenbeck could not make the note payments to Groome as a result. Groome offered to buy back the store (then incorporated as Rangeline Feed & Pet Center, Inc.) for a small sum in lieu of foreclosure. Shortly after Groome took back the store in July, 1993, Hallenbeck learned that the actual tax returns that were filed with the IRS by Groome evidenced a loss at the store, rather than the profit Groome had represented to Hallenbeck. Hallenbeck then sued Groome for, inter alia, fraud, alleging that he would not have bought Rangeline but for Groome's presentation of fraudulent tax returns that had been verified by his accountant.

4

15.     Defendant Steve Braswell ("Braswell Sr.") and Defendant William Steven Braswell ("Braswell Jr.") were working for Groome at Rangeline Supply Corporation in 1992. Braswell Jr. was the general manager and Braswell Sr. was one of the bookkeepers. They became minority shareholders when Hallenbeck bought the business.

16.     In 1993, when Rangeline Feed & Pet Center, Inc. could not keep up the payments, Groome foreclosed, taking the store back, and kept whatever down payment and installments had been paid to date. Groome again took on an active corporate role, as president and sole shareholder, and director of the new corporation, "Marathon Feed & Supply Corporation." The Braswells stayed on as general manager (Braswell Jr.) and bookkeeper (Braswell Sr.), as before.

17.     FARM PLAN CORPORATION ("Farm Plan") operates a credit program designed to finance accounts receivables. Farm Plan permitted certain retailers to offer the Farm Plan program to customers who purchased feed, grain, farm equipment, and other agricultural supplies from those retailers ("merchants"). The effect of this plan was that Farm Plan underwrote and financed the accounts receivable of those merchants whose Farm Plan customers purchased items from the merchant, so that the merchant, on a daily basis, received payment for those purchases via wire transfer to the merchant's bank from Farm Plan, and the customers (just as with a credit card) were billed by and remitted their payments directly to Farm Plan.

18.     Farm Plan had two types of accounts that were used to purchase items in stores such as Marathon. The first, called a "Preferred Account," required the customer to apply for personal credit, establishing credit-worthiness by giving credit and bank references  (just as with a credit card). Farm Plan made an independent determination as to whether, and how much, credit would

be authorized to these Preferred Account customers.  On these accounts established with Farm Plan, money was wired to the retailer on receipt of information that a purchase had been made.

19.    The second type of Farm Plan account was the "Merchant Authorized" account.  In these cases, the merchant (such as Marathon) made the decision to offer credit on the Farm Plan program, and likewise requested the credit limits to be made available.  The merchant submitted a list of such accounts at the time the merchant was accepted into the Farm Plan program, or the merchant telephoned a request to Farm Plan to establish such an account.  Farm Plan financed the receivables for the merchant in the same way as for a Preferred Account, by wiring the money to the store's account.  These accounts were, however, approved by the merchant for an extension of credit with full recourse to the merchant, subject to the terms of the Merchant Agreement.  The merchant received monthly reports which summarized the status of each Merchant Authorized account.

20.    Rangeline Feed & Pet Center, Inc. was a merchant which sought to finance its receivables by offering the Farm Plan credit program to customers.  As a prerequisite to authorizing the service to merchants, Farm Plan required the merchant itself to meet certain credit requirements, and to agree to adhere to Farm Plan's procedures, all set out in Farm Plan's "Merchant Application & Agreement" ("Merchant Agreement"). The Braswells applied for the Farm Plan program as Rangeline Feed and Pet Center, Inc., on October 6, 1993. (Exhibit 1, incorporated by reference.) Braswell Jr. was identified on the application as President of Rangeline, and his responsibility as "operations."   Braswell Sr. was identified as Vice President, and his responsibility as "administration."

21.    In order to induce Farm Plan to approve their application, the Braswells also executed a "Continuing Guaranty of Obligations Arising out of Farm Plan Merchant Agreement" ("Personal

6

Guaranty"). (Exhibit 2, incorporated by reference.) <u>Farm Plan turned down the Rangeline application, telling the Braswells that another personal guarantor would be required</u>. On October 19, 1993, Braswell Jr. wrote to Farm Plan, explaining that Rangeline Feed & Pet Center was now "Marathon Feed & Supply Corporation." (Exhibit 3, incorporated by reference.)

22.     On December 20, 1993, <u>Groome</u> submitted a Merchant Agreement identifying himself as President of Marathon. (Exhibit 4, incorporated by reference.) Groome also submitted a Personal Guaranty  (Exhibit 5, incorporated by reference), <u>making himself personally liable for all debts of Marathon to Farm Plan</u>. Groome was, in part, attracted to Farm Plan because of the ability to create Merchant Authorized accounts, whose credit underwriting and approval were entirely controlled by the merchant. The Personal Guaranty, <u>inter alia</u>, required notice of cancellation by the guarantor to be made in person, or by registered or certified mail, to be effective only after 90 days had elapsed from delivery of the notice. (Paragraph 2 of Exhibit 5.) Groome supported the personal guaranty application with a June 1,1992 financial statement. (Exhibit 6, incorporated by reference.)

23.     Based upon Groome's personal guaranty, which was accepted because of his claimed credit-worthiness, Marathon was permitted to participate in the Farm Plan program, with Groome as the personal guarantor of all indebtedness incurred on Merchant Authorized accounts.

24.     On or about December 7, 1994, Farm Plan received a letter signed by Groome as guarantor, and by Braswell Jr. as manager of Marathon, saying that, as of that date, Marathon's name would change to "Farm Depot." That is, the name of the store had changed for marketing purposes, but there had been no change of ownership. <u>Specifically, Groome said nothing about any change in his own status as owner or guarantor</u>. The letter also provided to Farm Plan a new checking account number, at SunBank, for the deposit of wire transfers from Farm Plan to Marathon/Farm

Depot. (Exhibit 7, incorporated by reference.) Farm Plan inquired of Groome by telephone as to the reasons for the name change, and he reassured Farm Plan that he was still the owner of the store, and the guarantor of the Farm Plan accounts, and that this was only a "d/b/a situation." Groome's representations regarding ownership of the store were false. In reality, Groome had sold all of the assets of Marathon to Farm Depot, Inc. for more than one million dollars.

25.     Groome took elaborate precautions to conceal from Farm Plan that he had actually sold the assets of Marathon. Chief among them was arranging for the submission of a new Personal Guaranty to Farm Plan, dated May 28, 1995, some six months after the December 7, 1994 asset sale to Farm Depot, Inc. The guaranty document identified the corporate entity to be guaranteed as "Marathon Feed & Supply Corporation," and the actual name on the store as "Farm Depot." (Exhbit 8, incorporated by reference) At a October 31, 1995 garnishment hearing in state court, Groome, of course, claimed (for the first time) that the signature on the May 28, 1995 Personal Guaranty was a forgery.

26.     Another effort to conceal the real status of Marathon d/b/a/ Farm Depot occurred in September 1995. Charles Becker of Purina Mills (a major supplier and creditor of Farm Depot) was telephoned by Farm Plan officials who inquired about his knowledge of Marathon/Farm Depot's ownership. Mr. Becker responded that Douglas Matthews was the owner. Groome telephoned Mr. Becker within the hour to reassure him that he, Groome, was the owner of Farm Depot, and to ask him to relay that fact to Farm Plan; in addition, Groome asked Mr. Becker to tell Farm Plan that Farm Depot was only a "d/b/a" for Marathon. Mr. Becker did relay Groome's version of Farm Plan at Groome's request, telling Farm Plan that he had apparently been mistaken in his earlier statement.

8

27.     In the summer of 1995, Farm Plan observed that certain Farm Plan accounts at Marathon appeared to have  the same address as Marathon itself: 2773 State Road 7, West Palm Beach, Florida.  Because accountholders (including Merchant Authorized accountholders) were to pay Farm Plan directly, and, accordingly, were to provide a correct billing address for that purpose, and because it would be unlikely that a farm or ranch would be receiving its mail at a retail store, Farm Plan opened an investigation of all of the Farm Plan accounts at Marathon, "d/b/a Farm Depot."  By interviewing the individual owners of the ranches and farms named on the accounts, and by examining the computer records at Marathon, "d/b/a/ Farm Depot," Farm Plan investigators confirmed that there were numerous accounts, totalling thousands of dollars, which were entirely "bogus" accounts; that is, account names which were billed to the Marathon address, but which did not represent real customers or real purchases.  Several of the bogus accounts were in the names of corporate entities that proved to belong to Groome.

28.     As well,  there were other accounts confirmed as having been opened by actual customers, who bought supplies for their farms and ranches, but which also showed charges that the customers had not made.  In one case (Jacaranda Farms), for example, the farm had been sold some three years earlier, yet the same owners were shown as having been billed by Farm Plan, at the 2773 State Road 7 address of Marathon, for "purchases" made regularly in the interval since the farm had been sold. These "genuine" accounts proved to have been used to make phony "purchases" charged to Farm Plan.

29.     Another category of accounts belonged to "real" customers at Marathon who had not authorized Farm Plan participation.  Their bills also went to Marathon's address and contained false charges.

30.     Marathon personnel (chiefly Braswell Jr. and Braswell Sr.) would open a bogus Merchant Authorized account and notify Farm Plan by telephone that such an account had been opened.  They would apply charges to the account, notifying Farm Plan by modem directly from Marathon's computer of "purchases," and the resulting bills were sent to the "accountholder" at Marathon's address.

31.     Groome set up and directed the scheme of false charges and false accounts in order to defraud Farm Plan. Groome was the owner and/or controlled eight of the entities that were used to submit false charges to Farm Plan:

Chadd Development

Falcon Farms

Sam Groome, Jr. (Groome himself has testified that this son, who lives in New York State, does not own a farm, and did not purchase items from Marathon/Farm Depot).

Olddie Farms

Quarter Horses, Inc.

Royal Arabians

W.C. Racing

Wellington Clydesdales

32.     Another Groome account, Marathon Clydesdales, had a zero balance, but on information and belief, was set up for future use in this conspiracy to defraud Farm Plan.

33.     Braswell Jr. has also admitted that he maintained a Merchant Authorized account in his own name that mixed legitimate and false charges.

10

34.     Bogus accounts that were set up in the name of former Marathon d/b/a Farm Depot customers, who had never been on Farm Plan and had not authorized participation in Farm Plan, included the following:

> Adrian Polo
>
> Jesus Baez
>
> Brown Horse Trailers
>
> Freedom Farm
>
> Hale Farms
>
> Jacaranda Farm
>
> North Run Farm

Farm Plan charges recorded in these account names were made for the purpose of inducing Farm Plan to wire funds to Marathon/Farm Depot to finance non-existent "receivables."

35.     At least eight accounts were in the names of Marathon d/b/a Farm Depot in-house account holders who were not on Farm Plan. As to Farm Plan, all charges on these accounts were unauthorized, and many represented "purchases" that were never made. These accounts included:

> Aspen Polo
>
> Beacon Hill Show Stable
>
> Carlos Gracida
>
> Memo Gracida
>
> Jimaguayu Ranch
>
> Near Knob Farm
>
> New Hope Farms

White Birch Farm

36.     At least six accounts were in the names of non-existent entities, as to which all charges were false:

Blowing Rock Farm

Peter Brand

Looking Glass Farm

Snooty Fox Farms (this was another Braswell Jr. account)

Sunny Land Farm

Whistle Wind Farm

37.     In order to allay any suspicions by Farm Plan, two methods were used to keep the accounts viable, while continuing to siphon off Farm Plan funds. First, small payments (perhaps 10% of the total invoiced amount generated by Farm Plan) would be made, at intervals that ensured that credit would not be revoked, the account would not be closed by Farm Plan, and collection activities by Farm Plan would not be commenced.

38.     Second, a large "purchase" (for example, $1,000.00 in feed) would be recorded on a bogus account, followed by an alleged "return" of part of the "merchandise" amounting to--again by way of example--perhaps $100.00. This would result in the generation of a credit memo. A credit memo would mean that the "customer" no longer owed the amount of the "return," and the credit memo amount would be charged against future money advanced by Farm Plan to Marathon d/b/a Farm Depot.

39.     Groome, in his position as sole owner and shareholder of Marathon, "d/b/a Farm Depot," and as personal guarantor of all indebtedness on the Farm Plan accounts, in telephone calls,

meetings, and by mail, between December 7, 1994, and at least September, 1995, continued to assure Farm Plan that the mounting debt attributable to Marathon was based on legitimate purchases by customers and was in no danger of becoming uncollectible. In September, 1995, Groome told agents of Farm Plan that he was aware of his responsibilities under the guaranty, and that all Farm Plan accounts would be fully repaid. On October 31, 1995, Groome admitted in testimony in state court his obligation as personal guarantor of the Farm Plan accounts at Marathon.

40. By September, 1995, numerous accounts that were either totally bogus accounts, or accounts on which false charges had been made had been identified. Charges on these accounts resulted in a total outstanding indebtedness to Farm Plan of hundreds of thousands of dollars.

41. FARM DEPOT ("Farm Depot") was the entity identified to Farm Plan by Groome in his December 7, 1994 letter as merely a "d/b/a" or "name change" of Marathon. It was not until the fall of 1995 that it was learned that Groome had, on that December day, in fact sold the assets of Marathon to Farm Depot, Inc. Sharon Campbell was ultimately identified as president of this new corporation. The person who arranged the transaction was Douglas Matthews ("Matthews"), Campbell's brother. The Braswells stayed on as bookkeeper (Braswell Sr.) and general manager (Braswell Jr.).

42. The false charges on real accounts and the false charges on bogus accounts--all charged on Farm Plan--continued under the Farm Depot, Inc. banner.

43. **Groome** owned and/or controlled during all pertinent times a variety of corporations and other entities in Florida and elsewhere. Some of these entities, on information and belief, have assisted Groome in carrying on a pattern of racketeering activity. Among the Florida corporations in which Groome is an officer or director are:

13

A-Aladin Travel, Inc. (President)

Air Orlando Helicopter, Inc. (Director)

A.T.I. Trucking Co., Inc. (President and Director)

Brown Rental Corp. (Director)

Chadd Development Corporation (Director, President, Vice President, Secretary, and Treasurer). This was a "real" Farm Plan account at Marathon/Farm Depot, but most charges made to it were bogus. Following the demise of Farm Depot, Inc., the Braswells continued to occupy the land and buildings, located at 2773 State Road 7, as "Brown Feed & Supply," in a sweetheart deal with Groome.

Equestrian Center, Inc. (President and Director)

Falcon Helicopter Service, Inc. (Director). The bogus Farm Plan account (in the name of Falcon Farms) has been identified as one set up by Groome. Falcon Helicopter was the predecessor corporate name for Air Orlando.

Horse World Corporation (Director)

Marathon Collectables Corporation (Director)

Marathon Executive Express Corporation (President and Director)

Marathon Express Corporation (Secretary and Vice President)

Marathon Trails Homeowners Association, Inc. (President, Secretary, and Treasurer)

Odie Aviation Corp. (Director, President, Treasurer, and Secretary). Odie Aviation, according to state records, was formerly known as "Marathon Feed & Supply Corporation," a name change that did not occur until April, 1995, several months after Groome sold Marathon's assets to

14

Farm Depot, Inc., and several months before Groome asked a Purina official to reassure Farm Plan that Groome continued to own Marathon d/b/a Farm Depot.

Rangeline Supply Corporation (Director, President, Secretary and Treasurer) (dissolved 1994). This is the corporation whose assets at 2773 State Road 7 Groome were sold to Hallenbeck and Rangeline Feed & Pet Center, Inc.

Royal Palm Arabians, Inc. (Director and President) (dissolved 1987). One of the bogus Farm Plan accounts controlled by Groome was "Royal Arabians."

The Wellington Clydesdales Corporation (Director, President, Treasurer and Secretary) (dissolved 1993). This is the name of one of Groome's Farm Plan accounts on which phony charges were made.

Marathon Farms, Ltd., a dissolved New York corporation (President), purchased Groome's 295.7-acre property in Marathon, New York in 1995. Groome had "purchased" the same property from Marathon Farms, Ltd. in 1987.

44.     As late as September, 1995, Groome was still seeking to conceal from Farm Plan the assets of Marathon, in order to maintain the fiction that Farm Depot was the same corporation with simply a different name over the door. This was done so that Farm Plan would not (1) close all of the Farm Plan accounts at Farm Depot guaranteed by Groome, both real and bogus, (2) begin collection activities on Farm Plan accounts at Farm Depot, and, most important, (3) turn to Groome as guarantor to pay any outstanding Farm Plan accounts at Farm Depot. The personal guaranty, by its terms, permitted Farm Plan to seek payment from Groome, as guarantor, before, after, or in addition to any collection activities pursued against any other person or entity connected with a Farm Plan Merchant Authorized account at Marathon or Farm Depot.

15

45.     In state court proceedings on October 31, 1995, Groome referred to an alleged letter sent to Farm Plan by him on December 7, 1994, announcing the sale of Marathon's assets and the cancellation of his Personal Guaranty.  Such a letter was never received by Farm Plan; Braswell Sr. testified that he would have been the one who would have typed it, and he did not; and Groome's contacts with Farm Plan from December 7, 1994 through October 31, 1995 were replete with reassurances that he still owned Marathon (regardless of its name), that he was still the personal guarantor of the Farm Plan accounts, and that his debt to Farm Plan was entirely secure and would be paid.

46.     In addition to arranging for transmission of the May 20, 1995 personal guaranty, and making sure that Purina personnel did not inadvertently reveal the true status of Marathon/Farm Depot to Farm Plan, Groome has also taken steps to frustrate Plaintiff's efforts to obtain discovery of records relating to Marathon/Farm Depot; in fact, Groome conveniently claims that he retained none of his corporate records--with very few notable exceptions.

47.     Groome, according to himself and Braswell Sr., maintained an office at Marathon long after the business was sold to Farm Depot, Inc.; he claims that he kept all of his business records (including Marathon records) at 2773 State Road 7.  Farm Depot, Inc. employees (who were formerly Marathon employees) were used by Groome to undertake activities on Groome's behalf in furtherance of the fraud alleged here, such as picking up his mail and sending out checks to Farm Plan.  This behavior provides further evidence that Groome sought to impress upon outsiders (including Farm Plan) that he still owned Marathon/Farm Depot, regardless of its name.

48.     As well, Groome caused property and inventory owned by others, including Farm Depot, Inc., to be removed from the premises located at 2773 State Road 7, long after he had sold the business.

49.     Groome has profited in a number of ways from the scheme to defraud Farm Plan. The bogus accounts and false charges, paid for by Farm Plan, provided cash flow throughout the year to this seasonal business (which ran from October through April, according to Groome himself). In effect, Groome made Farm Plan an involuntary major investor in his business.  Ultimately, Groome was able to effectively transfer the monies obtained illegally from Farm Plan to Marathon to his own pocket when he sold Marathon.  Moreover, Groome has taken action to secrete assets from creditors--including the monies obtained from Farm Plan--at least since the commencement of state court litigation against him by Farm Plan in late 1995.

50.     Concealment of his sale of Marathon's assets in 1994 meant that Farm Plan did not move to collect on the hundreds of thousands of dollars in receivables that Groome had personally guaranteed and that Farm Plan would not have financed but for Groome's Personal Guaranty. Additionally, delay in notification of Farm Plan of the ownership transfer that occurred in 1994 allowed the scheme to continue, with additional losses to Farm Plan.

51.     **Braswell Jr.** worked at 2773 State Road 7, West Palm Beach, Florida, at least since 1989, while it was, in turn, Rangeline Supply Corporation, Rangeline Pet & Feed Center, Inc., Marathon Feed & Supply Corporation, Farm Depot, Inc., Farm Depot, Inc. of Wellington, and (now) Brown Feed & Supply.  During the Farm Depot, Inc. period (December 1994- Fall 1996), he was briefly replaced as manager from November, 1995 through April, 1996.  He has admitted full

17

knowledge of Groome's scheme and further has admitted that he either transmitted the phony account and charge information to Farm Plan (via telephone and modem) or supervised that activity.

52.     Besides numerous statements admitting his culpability and knowing participation in the predicate acts that comprise the pattern of racketeering activity, Braswell Jr. also took steps to slow any Farm Plan efforts to discover the scheme and its method of operation. For example, he knew that Farm Plan accountholders would not be expected to receive their bills at the feed store's address, so he had some of the bills sent to addresses where either he or his agents collected the mail.

53.     **Braswell Sr.** worked as a bookkeeper at each version of the feed store at 2773 State Road 7 in West Palm Beach. He is the father of Braswell Jr. On information and belief, he has often been the actual transmitter of bogus account information to Farm Plan from Marathon/Farm Depot's computers, he has also notified Farm Plan on many occasions of false charges, and he has caused false credit memos to be generated. He has full knowledge of the existence of the scheme, Groome's ownership and participation, and the role of his son in the racketeering activity.

54.     Braswell Sr. has testified that it was Farm Plan's program of Merchant Authorized accounts, accounts that were not pre-approved by Farm Plan, that convinced Groome to apply for the program initially, in December, 1993. He also testified that it would have been he who typed any letter from Groome to Farm Plan announcing a sale of Marathon's assets in December, 1994-- and he prepared no such letter.

55.     As outlined above, Groome, Braswell Jr., and Braswell Sr. unlawfully and knowingly submitted names of bogus Farm Plan accountholders to Farm Plan, notified Farm Plan of numerous false or non-existent or inflated purchases that were purportedly made on actual and bogus Farm Plan accounts, and caused Farm Plan to wire transfer funds to Marathon/Farm Depot bank accounts,

18

by knowingly and willfully causing letters, account information, credit information, checks, and other documents to be delivered by the United States Postal Service and other private or commercial interstate carriers.

## ALLEGATIONS REGARDING FEDERAL AND STATE RICO CLAIMS

56.    Defendants Groome, Braswell Jr., and Braswell Sr. are each a "person" within the meaning of Title 18, United States Code, Sections 1961(3), 1962, and 1964, as well as § 895.02, Fla. Stat.

57.    At all times relevant to this action Defendants Groome, Braswell Jr., and Braswell Sr., both individually and collectively, were a group of personas associated in fact, although not a legal entity, and were an "enterprise" engaged in and whose activities affected interstate commerce within the meaning of Title 18, United States Code, Sections 1961(4), 1962, and 1964, as well as §§ 895.02(3) and (4), 895.03, and 895.05, Fla. Stat.

58.    At all times relevant to this action, Marathon Feed & Supply Corporation, later known as Marathon Feed & Supply Corporation d/b/a Farm Depot, later known as Farm Depot, Inc., later known as Farm Depot of Wellington, Inc., was a legal entity which operated as an "enterprise" engaged in and whose activities affected interstate commerce within the meaning of Title 18, United States Code, Sections 1961(4), 1962, and 1964, as well as §§895.02(3), 895.03, and 895.05, Fla. Stat. The purpose of the Defendants, through the enterprise, included, but was not limited to, obtaining money and credit from the Plaintiff Farm Plan, and fraudulently concealing such activities and engaging in such activities by means of false or fraudulent pretenses, mail fraud, wire fraud, false representations, promises, submission of false documentation, and taking and diverting and

19

appropriating same to the use and benefit of this enterprise. This will be referred to as the "Marathon enterprise."

## COUNT 1

## CONSPIRACY

59. Paragraphs 1 through 58 are expressly alleged herein.

60. By reason of the foregoing, Defendants did knowingly, willfully, and intentionally combine, conspire, confederate, agree, and reach a tacit understanding with each other and others known and unknown, to open false Farm Plan Merchant Authorized accounts and report false and fraudulent charges on actual and bogus Farm Plan Merchant Authorized accounts at Marathon Feed & Supply Corporation, Marathon Feed & Supply Corporation d/b/a Farm Depot, Farm Depot, Inc. and Farm Depot of Wellington, Inc. ("the Marathon enterprise"), and use and cause another to use the mail and wire facilities in interstate commerce, with the intent that Farm Plan would wire funds into bank accounts owned and/or controlled by Defendants, with the intent to defraud Farm Plan through the use of mail and wire facilities, in violation and attempted violation of 18 U.S.C. §§ 1341 and 1343, and 18 U.S.C. § 2.

61. As a direct and proximate result of these violations of 18 U.S.C. §§1341 and 1343, and 18 U.S.C. §2, Plaintiff has been injured in its business and property in the manner set forth herein.

## THE OBJECT OF THE CONSPIRACY

62. It was the principal purpose and object of the conspiracy to deceive and defraud Farm Plan into wire transferring hundreds of thousands of dollars to bank accounts in the name of the Marathon enterprise and owned and/or controlled by Defendants, so that the Defendants could take

the money intended to finance receivables of the Marathon enterprise and convert it to their own use.

## OVERT ACTS

63.    In furtherance of the conspiracy and to effect the purposes and objects thereof, there were committed by one or more of the co-conspirators, in the Southern District of Florida and elsewhere, the following overt acts, among others:

(a)    On or about October 6, 1993, Braswell Jr. and Braswell Sr. submitted to Farm Plan via the United States Postal Service a Merchant Agreement and a Personal Guaranty signed by Braswell Jr. as President and Braswell Sr. as Vice President of Rangeline Feed & Pet Center, Inc., later known as Marathon Feed & Supply Corporation. It was rejected by Farm Plan.

(b)    On or about December 20, 1993, Braswell Sr. filled out, at Groome's direction, a Merchant Agreement and Personal Guaranty signed by Groome as "owner" of the Marathon enterprise, then known as Marathon Feed & Supply Corporation. Braswell Sr. then submitted the Merchant Agreement and Personal Guaranty to Farm Plan via United States Postal Service.

(c)    Groome also submitted to Farm Plan via United States Postal Service on or about December 20, 1993, a financial statement dated July 1, 1992, in his name, which induced Farm Plan to accept Groome as a merchant participant in Farm Plan, and as  personal guarantor of Merchant Authorized accounts at the Marathon enterprise.

(d)    On or about December 20, 1993, Groome submitted to Farm Plan a bank account number at Prime Bank into which Farm Plan funds would be wire transferred immediately for the benefit of the Marathon enterprise, upon receipt of computer-generated reports sent to Farm

Plan via modem advising that purchases had been made by various Farm Plan accountholders (Preferred Accounts and Merchant Accounts).

(e)     On or about December 7, 1994, Groome and Braswell Jr. submitted a notice of change of bank account for the Marathon enterprise, signed by them both, and instructing Farm Plan from thenceforth to wire funds into the new account, at SunBank. This notice was delivered by the United States Postal Service.

(f)     On or about December 7, 1994, upon being asked by Farm Plan by telephone why the account was being changed, Groome assured Farm Plan that he was (i) still the owner and personal guarantor for the Marathon enterprise, and (ii) that the Marathon enterprise was changing only the name of the store to "Farm Depot," in what Groome described as a "d/b/a situation."

(g)     Beginning in 1993, and continuing until Farm Plan closed all of the Marathon enterprise's Farm Plan accounts of whatever type in 1995, Braswell Jr. and Braswell Sr., with Groome's knowledge and/or at his directions actually entered the bogus account information and the false charges information into the Marathon enterprise's computer, and transmitted that information via modem to Farm Plan.

(h)     On or about May 28, 1995, Groome instructed Braswell Jr. to prepare a new Merchant Agreement and Personal Guaranty in Groome's name. The purpose of this second Merchant Agreement and second Personal Guaranty was to continue to allay any suspicions Farm Plan might have that Groome was not, in fact, still the owner of the Marathon enterprise, to conceal the asset sale of the Marathon enterprise from Farm Plan, to delay any efforts by Farm Plan to institute collection activities against Groome, and to keep the bogus accounts and the false charges from becoming uncovered by Farm Plan.

22

(i)     On or about September 22, 1995, Groome telephoned a Purina Mills official to instruct him to tell Farm Plan that he, Groome, was still the owner and personal guarantor of the Farm Plan accounts at the Marathon enterprise, by then known as Farm Depot, Inc.

(j)     Groome, Braswell Jr., and Braswell Sr. notified Farm Plan by modem to wire funds to the credit of bank accounts of the Marathon enterprise in order to defraud Farm Plan, knowing that the amounts sought to be wired did not represent actual purchases, and that all monies wired by Farm Plan to finance account receivables on these purchases would be converted to the use of the Defendants.

(k)     Groome, Braswell Jr., and Braswell Sr. notified Farm Plan by modem to wire funds to the credit of numerous accounts in order to defraud Farm Plan, knowing that the accounts were bogus, and that charges on those accounts were false, and that monies wired by Farm Plan in the name of each accountholder would be converted to the use of the Defendants.

## COUNT 2

## MAIL FRAUD

64.     Paragraph 1 through 58 are expressly adopted herein.

65.     By reason of the foregoing, Defendants unlawfully, knowingly, and willfully devised and intended to devise a scheme and artifice to defraud and for obtaining money from Farm Plan by means of false and fraudulent pretenses, representations, and promises, well knowing that the pretenses, representations, and promises would be and were false and fraudulent when made, and caused to be delivered by the United States postal service according to the direction thereon, mail matter, in violation and attempted violation of 18 U.S.C. § 1341.

23

66.     As a direct and proximate result of these violations and 18 U.S.C. § 1341 by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

### COUNT 3

### WIRE FRAUD

67.     Paragraph 1 through 58 are expressly adopted herein.

68.     By reason of the foregoing, Defendants unlawfully, knowingly, and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money from Farm Plan by means of false and fraudulent pretenses, representations, and promises, well knowing that the pretenses, representations, and promises would be and were false and fraudulent when made, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, in violation and attempted violation of 18 U.S.C. § 1341.

69.     As a direct and proximate result of these violations of 18 U.S.C. §1343 by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

### COUNT 4

### CIVIL THEFT

70.     From as early as or about October, 1993, until as late as or about September, 1995, Defendants, through the Marathon enterprise, did knowingly obtain or use, or endeavor to obtain or use, the property of another, to wit: Farm Plan Corporation, a Delaware corporation, with intent to, either temporarily or permanently, deprive Farm Plan of a right to the property, to a benefit of the property, or to appropriate the property to their own use or to the use of any person not entitled to

24

the use of the property, said property being currency of the United States in an amount in excess of $100,000.00 or more, in violation of § 812.014 and § 772.11, Fla. Stat.

## COUNT 5

### FEDERAL RICO VIOLATION OF §1962(a)

71.     Plaintiff expressly adopts paragraphs 1 through 58 herein.

72.     By reason of the foregoing, Defendant Groome unlawfully, knowingly and willfully used income derived from a pattern of racketeering activities, directly or indirectly, in the operation of the Marathon enterprise, in violation and attempted violation of 18 U.S.C. §1962(a).  Defendants Braswell Jr. and Braswell Sr. each individually and collectively unlawfully, knowingly, and willfully aided and abetted these violations and attempted violations of 18 U.S.C. §1962(a) in violation of 18 U.S.C. §2.

73.     As a direct and proximate result of these violations of 18 U.S.C. §1962(a) by Defendants, Plaintiff Farm Plan has been injured in its business or property in the manner set forth herein.

## COUNT 6

### FEDERAL RICO VIOLATION OF §1962(b)

74.     Plaintiff expressly adopts paragraphs 1 through 58 herein.

75.     By reason of the foregoing, Defendant Groome unlawfully, knowingly and willfully acquired or maintained, directly or indirectly, an interest or control of the Marathon enterprise through a pattern of racketeering activity in violation and attempted violation of 18 U.S.C. §1962(b). Defendants Braswell Jr. and Braswell Sr. unlawfully, knowingly and willfully aided and abetted these violations and attempted violations of 18 U.S.C. §1962(b), in violation of 18 U.S.C. §2.

25

76.     As a direct and proximate result of these violations of 18 U.S.C. §1962(b) by Defendants, Plaintiff has been injured in its business or property in the manner set forth herein.

## COUNT 7

### FEDERAL RICO VIOLATION OF §1962(c)

77.     Plaintiff expressly adopts paragraphs 1 through 58 herein.

78.     By reason of the foregoing, Defendants unlawfully, knowingly and willfully conducted and participated directly or indirectly in the conduct of the affairs of the Marathon enterprise which affects interstate commerce through a pattern of racketeering activity in violation or attempted violation of 18 U.S.C. §1962(c).

79.     As a direct and proximate result of these violations of 18 U.S.C. §1962(c) by Defendants individually and collectively, Plaintiff has been injured in its businesses and property as set forth herein.

## COUNT 8

### FEDERAL RICO CONSPIRACY VIOLATION, 18 U.S.C. §1962(d)

80.     Paragraphs 1 through 58 are incorporated herein by express reference.

81.     Based on the foregoing paragraphs, circumstances, and events, Defendants, individually and collectively, unlawfully, knowingly and willfully conspired and continue to conspire to violate provisions of 18 U.S.C. §§1962(a), (b), and (c), in violation of 18 U.S.C. §1962(d).

82.     As a direct and proximate result of these violations of 18 U.S.C. §1962(d) by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

### PENDENT STATE LAW CLAIMS

26

**COUNT 9**

**FLORIDA RICO VIOLATION OF §895.03(1)**

83.    Plaintiff expressly adopts paragraphs 1 through 58 herein.

84.    By reason of the foregoing, Defendants unlawfully, knowingly and willfully used or invested directly or indirectly proceeds received from a pattern of racketeering activity or the proceeds derived from the investment or use thereof, in the establishment or operation of the Marathon enterprise, in violation and attempted violation of §895.03(1), Fla. Stat.

85.    As a direct and proximate result of these violations of §895.03(1), Fla. Stat. by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

**COUNT 10**

**FLORIDA RICO VIOLATION OF §895.03(2)**

86.    Plaintiff expressly adopts paragraphs 1 through 58 herein.

87.    By reason of the foregoing, Defendants unlawfully, knowingly and willfully acquired or maintained directly or indirectly an interest in and control over the Marathon enterprise as well as over the money of Plaintiff through a pattern of racketeering activity or proceeds derived therefrom, in violation and attempted violation of §895.03(2), Fla. Stat.

88.    As a direct and proximate result of these violations of §895.03(2), Fla. Stat., by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

**COUNT 11**

**FLORIDA RICO VIOLATION OF §895.03(3)**

89.    Plaintiff expressly adopts paragraphs 1 through 58 herein.

27

90.     By reason of the foregoing, Defendants, who were employed by or associated with the Marathon enterprise, unlawfully, knowingly and willfully conducted or participated, directly or indirectly, in such enterprise through a pattern of racketeering activity, in violation and attempted violation of §895.03(3), Fla. Stat.

91.     As a direct and proximate result of these violations of §895.03(3), Fla. Stat., by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

## COUNT 12

### FLORIDA RICO VIOLATION OF §895.03(4)

92.     Paragraphs 1 through 58 are incorporated herein by express reference.

93.     By reason of the foregoing, Defendants unlawfully, knowingly and willfully conspired or endeavored to conspire to violate the provisions of §895.03(1), (2), and/or (3), in violation of §895.03(4), Fla. Stat.

94.     As a direct and proximate result of these violations of §895.03(4), Fla. Stat., by Defendants, Plaintiff has been injured in its business and property in the manner set forth herein.

## COUNT 13

### BREACH OF CONTRACT

95.     Plaintiff expressly adopts paragraphs 1 through 58 herein.

96.     Plaintiff has fully complied with all of their obligations under the Personal Guaranty entitling them to full performance by Defendant Groome.

97.     All conditions precedent to the bringing of this action have been performed, have occurred, or were waived by Defendant Groome.

98.     Defendant Groome materially breached his Personal Guaranty with Plaintiff by failing to make the payments required thereunder, and by failing to comply with, or otherwise meet the warranties and obligations under the Personal Guaranty.

99.     As a direct result of Defendant Groome's breach, Plaintiff has suffered substantial damages, totalling at a minimum $586,114.50.

## COUNT 14

### FRAUD AND NEGLIGENT MISREPRESENTATION

100.    Plaintiff expressly adopts paragraphs 1 through 58 herein.

101.    Defendants Groome, Braswell Jr. and Braswell Sr. misrepresented certain material facts to Plaintiff, including, but not limited to the following:

(a)     That Defendant Groome accepted responsibility and would pay off all sums owed to Farm Plan.

(b)     That certain account transactions were genuine, when in fact, they were not.

(c)     That certain account transactions represented bona fide sales of merchandise or service under which the merchant delivered or performed all of its obligations and which complied with the Farm Plan Merchant Agreements, when, in fact, they did not.

(d)     That certain credit memos submitted to Plaintiff represented a credit to a Farm Plan Account arising from a bona fide return of goods or a price adjustment on a previous Farm Plan sale, when, in fact, they did not.

(e)     That there had been no material changes in merchant's financial or ownership status since acceptance of the Farm Plan Merchant Agreements (which had not been approved by Plaintiff 60 days in advance of the change), when, in fact, Marathon Feed & Supply Corporation sold

29

its business to Marathon, Marathon d/b/a Farm Depot, Inc. and/or Farm Depot of Wellington, Inc. f/k/a Farm Depot, Inc. on or about December 7, 1994, without proper notice to Plaintiff.

102.    Defendants Groome, Braswell Jr. and Braswell Sr. knew or should have known that:

(a)    Wire transfers were being made from Farm Plan Corporation to the Marathon Entities' SunBank account without any corresponding repayments tendered in favor of Farm Plan Corporation;

(b)    Bogus accounts and accounts that never existed were established by employees of the Marathon Entities.

(c)    Employees of the Marathon Entities fabricated credit requests and invoices for bogus purchases made on both existing customer accounts, and nonexistent customer accounts.

(d)    Employees of the Marathon Entities created credit memos for payments and returns that were not legitimate.

103.    Defendants Groome, Braswell Jr. and Braswell Sr. intended to induce Plaintiff to act on the misrepresentations.

104.    Plaintiff has been damaged as a result of having acted in justifiable reliance upon Defendants Groome, Braswell Jr. and Braswell Sr.'s misrepresentations.

105.    Defendants Groome, Braswell Jr. and Braswell Sr.'s actions forced Plaintiff to conduct an investigation of all Farm Plan customers who had purchased goods or services from the Marathon Entities, and Plaintiff's investigation of their legitimate customers in a community as small and close knit as the West Palm Beach equestrian community caused Plaintiff to suffer damage to its reputation.

## COUNT 15

## UNJUST ENRICHMENT

106.    Plaintiff expressly adopts paragraphs 1 through 58 herein.

107.    During the time that Plaintiff wire transferred deposits to the Marathon Entities' account, Defendants Groome, Braswell Jr. and Braswell Sr. were well aware that Plaintiff was conferring these benefits upon them in full expectation of repayment.

108.    By requesting the payments and wire transfers under the Merchant Agreements the Defendants Groome, Braswell Jr. and Braswell Sr. acquiesced to and accepted Plaintiff's performance, thereby creating a contract implied in law and an obligation to repay the sums of money to Plaintiff.

109.    Defendants Groome, Braswell Jr. and Braswell Sr. have gained the benefit of Plaintiff's services, and same have already been incorporated into the Marathon Entities' pet and feed business. Defendants Groome, Braswell Jr. and Braswell Sr.'s acceptance and retention of the benefits bestowed upon them by Plaintiff's performance under the circumstances described herein make it inequitable for the Defendants Groome, Braswell Jr. and Braswell Sr. to retain these benefits without paying the value thereof.

110.    Plaintiff is owed compensation that is at least equivalent to the value of the deposits sent via wire transfers by Plaintiff to the Marathon Entities' accounts; deposits made by Farm Plan for what Farm Plan believed to be genuine customer purchases but which were instead credited to bogus accounts for purchases that never took place.

## COUNT 16

## CONVERSION

111.    Plaintiff expressly adopts paragraphs 1 through 58 herein.

112.    Plaintiff has made numerous demands for the return of those sums of money deposited by Plaintiff in the Defendants Groome, Braswell Jr. and Braswell Sr.'s Marathon Entities accounts.

113.    Plaintiff deposited these monies in reliance on the representations and warranties made by the Defendants Groome, Braswell Jr. and Braswell Sr. regarding the legitimacy of customer accounts and purchases.

114.    Defendant Groome  wrongfully possesses sums of money and he has not yet returned any of the sums advanced by Plaintiff and refuses to do so.

115.    Plaintiff, by wire transferring funds to the Marathon Entities at the request of Defendants, permitted Defendants Groome, Braswell Jr. and Braswell Sr. to use these monies for what Plaintiff believed were legitimate Farm Plan customer transactions.

116.    Instead, Defendants Groome, Braswell Jr. and Braswell Sr. used these monies, advanced to them by Plaintiff, for unapproved purposes detrimental to Farm Plan and beneficial to themselves.

117.    Defendant Groome has gained substantial benefit and continues to benefit from the use of Plaintiff's money, having wrongfully converted same to his own use.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)    That process issue and service be obtained upon Defendants according to law;

(b)    Trial by jury on all issues so triable;

(c)    As to Counts 1 through 8 of the complaint inclusive,  judgment against Defendants, and each of them, for such sums as compensatory damages, trebled, as the evidence

32

shall show Plaintiff to be entitled to recover under 18 U.S.C. §1964(c), as well as punitive damages in an amount sufficient to deter such wrongful conduct in the future, attorney's fees, costs of this action, and applicable interest;

(d)     As to Counts 9 through 16 of the complaint inclusive, judgment against Defendants, and each of them, punitive damages in an amount sufficient to deter such wrongful conduct in the future, under §768.73, Fla. Stat., attorney's fees, costs of this action, and applicable interest;

(e)     As to Counts 1 through 12 of the Complaint inclusive, an order enjoining violations of the provisions of § 895.03, Fla. Stat., by ordering Defendants to divest themselves of any interest in the Marathon enterprise, including the real property on which the Marathon enterprise was established; under 18 U.S.C. § 1964 and § 895.03, Fla. Stat., by imposing reasonable restrictions upon the future activities or investments of the Defendants, including, but not limited to, prohibiting the Defendants or any of them from engaging in the same type of endeavor as the enterprise in which they are or any of them were engaged in violation of the provisions of 18 U.S.C. § 1964 and §895.03, Fla. Stat.; by ordering the forfeiture of the charters of Defendants' corporations, and their dissolution, as the result of their use of the corporations to conduct the affairs of the corporations in violation of 18 U.S.C. §1964 and § 895.03, Fla. Stat., attorney's fees, costs of this action, and applicable interest.

(f)     As to Federal RICO claims, an accounting of the proceeds of the enterprise, tracing the proceeds to John Does who benefited, as determined by a master, and the imposition of a constructive trust on those proceeds for the benefit of Plaintiff, through injunctive relief or otherwise.

33

(g)     Such other relief as this Court deems just and equitable.

**PATRICK C. BARTHET, P.A.**
Attorneys for Plaintiff
200 S. Biscayne Blvd., Suite 2120
Miami, Florida   33131
(305) 347-5290

By:_____

**PATRICK C. BARTHET**
Florida Bar No. 294012
**NANCY C. WEAR**
Florida Bar No. 181500

Dated: April 22, 1997.

34

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

# PLEASE REFER TO COURT FILE

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**97 - 8284**

**I (a) PLAINTIFFS**

Farm Penn Corp.

**DEFENDANTS**

Samuel W. Groome
William Steven Braswell
Steven Braswell, Chadd Development Corp.
John Doe 1-10

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Delaware_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A PalmBeach 97 cv 8284 WDF/LSS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Patrick C Barthet PA
200 S Biscayne Blvd #2120
Miami FL 93131  205-347-5290

ATTORNEYS (IF KNOWN)

**CIV-FERGUSON**
MAGISTRATE JUDGE
SNOW

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, (PALM BEACH,) MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only)
(PLACE AN X ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

18 USC 1961 et. seq. (Civil Rico); 28 USC 1332 (Diversity)

**IVa.** _25_ days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE / PENALTY | A BANKRUPTCY | OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☒ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General * | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other * | | | ☐ 890 Other Statutory Actions * |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights * A or B | | | * A or B |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

- ☒ 1. Original Proceeding
- ☐ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED** CHECK IF THIS IS A ☐ CLASS ACTION  **DEMAND $** _____  Check YES only if demanded in complaint:
**IN COMPLAINT** ☐ UNDER F.R.C.P. 23  **JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED** (See Instructions):
**CASE(S) IF ANY** JUDGE _____ DOCKET NUMBER _____

DATE 4/22/97  SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 075700
Date Paid: 04/22/97

Amount: 150.00
M/fp: _____